ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| BAS PROPERTIES, INC.<br>Peticionario<br><br>v.<br><br>MIGUEL ORTIZ<br>Recurrido | KLCE202301102<br><br><br>CONSOLIDADO<br>CON | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.<br>E PE2012-0046<br><br>Sobre:<br>Injunction-Clásico |
| BAS PROPERTIES, INC.<br>Recurrido<br><br>v.<br><br>MIGUEL ORTIZ<br>Peticionario | KLCE202301129 | Recurso de Certiorari procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.<br>E PE2012-0046<br><br>Sobre:<br>Injunction-Clásico |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Rivera Marchand y el Juez Salgado Schwarz.

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2024.

Comparece Bas Properties, Inc. (BAS) y nos solicita la revocación de una *Resolución* notificada el 18 de julio de 2023 por el Tribunal de Primera Instancia, Sala de Caguas (TPI o foro primario). En esta, el foro primario denegó los petitorios sumarios instados por BAS y por Miguel Ortiz y MAO & Associates Investment, Inc. (MAO), respectivamente. Pendiente lo anterior, MAO presenta un recurso intitulado *Certiorari,* en el que nos suplica la revocación de la misma determinación impugnada. En su consecuencia, y según solicitado por MAO, ordenamos la consolidación de los

Número Identificador

SEN2024_____

referidos recursos de epígrafe, en aras de garantizar mayor transparencia, agilidad y efectividad del trámite ante nos, conforme autoriza la Regla 80.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 80.1.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y modificamos el dictamen recurrido. Veamos.

## I.

BAS incoó una demanda y solicitud de *injunction* preliminar y permanente en contra de Miguel Ortiz, Fulana de Tal y la sociedad legal de gananciales compuesta por ambos; Miguel Ortiz, Jr., Fulana de Tal y la sociedad legal de gananciales compuesta por ambos; MAO & Associates Investment, Inc.; Levon Furniture, Inc.; Corporación ABC; y Fulano de Tal. De sus alegaciones se desprende que, las partes son vecinos colindantes en el Parque Industrial Bairoa sito en el municipio de Caguas. Expuso que, en o alrededor del 22 de febrero de 2012, el demandado inició una construcción de un muro de cemento en la colindancia, sita en la franja sur-sureste de su propiedad. Según su apreciación, el muro intercepta con un canal pluvial e interrumpe el paso de aguas de la servidumbre de acueductos existente en su propiedad. Expresó que, a pesar de los intentos para solicitar que no obstruyeran canales y acueductos, el demandado informó que tenía derecho a así hacerlo.

BAS arguyó que, su predio resulta ser el predio que se beneficia de la servidumbre y por ello, es el predio dominante. Mientras que, el predio del demandado es el gravado, por lo que es el predio sirviente. La existencia de la servidumbre de acueductos implica que el dueño del predio sirviente, aquí recurrido, no puede impedir u obstaculizar el paso del excedente del predio dominante. Sostuvo que, BAS es el tenedor de la servidumbre de acueductos que grava la propiedad de la parte demandada. Suplicó al amparo

de las Reglas 56 y 57 de las Reglas de Procedimiento Civil, 32 LPRA V., R. 56 y 57, el cese y desista de la construcción del muro por el daño irreparable que las inundaciones masivas ocasionarían en los almacenes comerciales ubicados en la zona industrial, entre otros. Evaluado lo anterior y tras la celebración de la una vista, el TPI ordenó la paralización de la construcción.[1]

Por su parte, Miguel A. Ortiz Torres (señor Ortiz Torres) y MAO acreditaron su alegación responsiva y una reconvención. En apretada síntesis, dicha parte negó las alegaciones y suplicó al foro primario que condenara a BAS por las obras realizadas de forma negligente que le han causado daños continuados a MAO.[2] BAS acreditó su *Contestación A Reconvención Enmendada* el 25 de abril de 2023.[3]

Así las cosas y tras superar varios incidentes procesales que resultan innecesarios pormenorizar, el señor Ortiz Torres y MAO instaron una *Moción de sentencia sumaria* el 13 de abril de 2023, junto a la cual anejaron múltiples documentos.[4] En esta propusieron 89 hechos incontrovertidos y argumentaron sobre la improcedencia del *injunction* permanente por entender que existe otro remedio adecuado en ley. A ello añadieron que, el asunto planteado por BAS no es justiciable porque pendiente el pleito, se instaló un sistema de bombeo que resolvió el asunto para ambas partes, tornando la controversia en académica. Por lo que, a su

---

[1] Véase, Apéndice de BAS, pág. 18, *Resolución y Orden* emitida el 9 de marzo de 2022.

[2] Véase, Apéndice de MAO, págs. 33-40. La reconvención fue enmendada y presentada el 14 de diciembre de 2016.

[3] Véase Apéndice de BAS, págs. 41-45.

[4] Véase, Apéndice de MAO, págs. 45-352. Junto a su petitorio incluyó los siguientes documentos: Declaración jurada suscrita por Miguel A. Ortiz Torres; Anejo1-Escritura Número Once Permuta; Anejo 2-Estudio de título; Anejo 3-Folios del Registro de la Propiedad; Anejo 4-Resumé de Ingeniero Rafael Segarra García; Anejo 5-Informe Pericial del Ingeniero Rafael Segarra García; Anejo 6-Informe Pericial Preliminar del CPA José A. Díaz Crespo; Anejo 7-Notificación de deposición a Ingeniero Hornedo; Anejo 8-Deposición del Ingeniero Alex A. Hornedo Robles; Anejo 9-Informe Ingeniero Alex Hornedo Robles; Anejo 10-fotos áreas de MAO; Anejo 11-Fotos DTOP; Anejo 12-Fotos Obstrucción; Anejo 13-Fotos de construcción; Anejo 14-Fotos de inundación 2015, Anejo 15-Fotos de inundación 2016 y Anejo 16-Mejoras de MAO para elevación.

entender, se debe permitir al demandado continuar su obra de infraestructura. Solicitó la desestimación de la causa ante la falta de parte indispensable. Ello, por entender que, el dueño del Lote F (colindante del Lote E) debería ser unido al pleito. Además, argumentó sobre la ausencia de prueba para descorrer el velo corporativo y para sostener la reclamación instada por BAS en contra del señor Ortiz Torres en su capacidad personal. A su vez, arguyó sobre la procedencia de la reconvención y acción de daños presentada por MAO en contra de BAS.

En reacción, BAS presentó su oposición y, a su vez, instó su propio petitorio sumario. Precisó su postura sobre las propuestas de hechos de MAO. Además, propuso 12 hechos incontrovertidos para fundamentar su reclamación junto a múltiples anejos.[5] No surge del expediente que MAO haya acreditado una oposición a la referida solicitud, en esa etapa de los procedimientos.

Evaluado lo anterior, el TPI denegó ambos petitorios sumarios mediante una *Resolución* emitida el 13 de julio de 2023. En esta consignó las siguientes nueve determinaciones de hechos:

1. La corporación MAO & Associates Investment Inc. (en Adelante "MAO") es una corporación con fines de lucro debidamente autorizada por el Estado Libre Asociado para hacer negocios en la Isla, registrada en el Departamento de Estado de Puerto Rico, con el número de registro 79837.
2. BAS Properties Inc., (en adelante "BAS"), quien es la parte *demandada-reconvenida*, es una corporación con fines de lucro debidamente autorizada por el Estado Libre Asociado para hacer negocios en la Isla, registrada en el Departamento de Estado de Puerto Rico, con el número de registro 126464.
3. MAO es la dueña en pleno dominio del lote industrial radicado en el Barrio Tomás de Castro del término municipal de Caguas, consistente en una parcela de 10,423.33 metros cuadrados, inscrita al folio 145 del Tomo 341 de Caguas, consistente hoy en la finca 29,726 de la Sección primera de Caguas, según surge de la

---

[5] Véase, Apéndice de BAS, págs. 353-438. Junto a su oposición incluyó los siguientes documentos: Exhibit 1-Declaración jurada suscrita por Alon Shaked; Exhibit 2-Planos flujo de escorrentías; Exhibit 3-Foto del poceto; Exhibit 4-Foto de colindancia entre MAO y BAS; Exhibit 5-Foto de colindancia entre MAO y BAS; Exhibit 6-Contrato de arrendamiento entre MAO y Luxury del 2012; Exhibit 7-Contrato de arrendamiento entre MAO y Departamento de la Familia; Exhibit 8-Informe Pericial de Agrimensura; Exhibit 9 al 12-Fotos del canal o acueducto; Exhibit 13-Estudio de Título de BAS; Exhibit 14 y 15-Fotos del parte de muralla de MAO con BAS; y Exhibit 16-Foto de Google Maps de Muralla de MAO con Atento.

escritura número once de 31 de diciembre de 1991, otorgada por el Notario Arcangel Cáceres Carlo.

4. El Lote C colinda en parte por el norte con el Lote E, propiedad de la parte demandante BAS, según surge de la descripción registral que consta en la escritura número once.

5. Del estudio de título preparado al 21 de junio de 2019 por Profesional Title Services no surge que la propiedad esté gravada a alguna servidumbre.

6. Tanto en el Lote C como en el Lote E se han realizado obras de construcción.

7. Tanto el Lote C como el Lote E, ambas [sic] sufren problemas de [sic] relacionados al drenaje de aguas pluviales o manejo de corrientes de agua, incluso, en ambas se han tomado medidas para atender dicho problema.

8. La Compañía de Fomento Industrial, PRIDCO por sus siglas en inglés, desarrolló un parque industrial creando varias edificaciones industriales a partir de la década del 1950.

9. Los Lotes C y Lote E en controversia provienen de dicho desarrollo del parque industrial de PRIDCO.

Además, identificó ocho controversias medulares que, a su entender, impiden la adjudicación de la causa por la vía sumaria:

1. Relación de niveles de elevación entre el predio inferior y los predios superiores, o nivel de topografía y declive entre ambos lotes.

2. Diseño original del parque industrial donde ubican los lotes C y E en controversia, incluyendo información del sistema de canales y drenaje de aguas pluviales entre los lotes, si alguno.

3. Diseño, procedencia y condición actual del sistema de drenaje pluvial construido posteriormente en el Lote C, si alguno.

4. Diseño, procedencia y condición actual del sistema de drenaje pluvial construido posteriormente en el Lote E, si alguno.

5. Modificaciones u obras de construcción en los predios inferiores y superiores, incluyendo diseño, propósito y su fecha de realización.

6. Efecto de dichas modificaciones u obras en cuanto al drenaje pluvial en el predio inferior y los superiores, incluyendo efecto proyectado si se permitiera la construcción del muro en controversia.

7. Magnitud y procedencia de los problemas existentes o inminentes en el predio inferior y los superiores en cuando a inundación o manejo de aguas.

8. Cuantía de los daños reclamados mediante reconvención, si procedieran en derecho.

En desacuerdo, las partes solicitaron reconsideración[6] y mediante orden notificada en autos el 12 de septiembre de 2023, el

---

[6] Cabe señalar que BAS instó la solicitud de reconsideración el 1 de agosto de 2023 en la cual destacó que MAO no se opuso a su petitorio sumario y a su vez, reiteró sus argumentos. Miguel Ortiz Torres y MAO el 2 de agosto de 2023, presentaron su *Moción de Reconsideración* en la que destacaron su postura sobre la suficiencia de los documentos anejados a su petitorio sumario y reiteraron sus argumentos. Además, el 7 de septiembre de 2023, MAO y Miguel Ortiz Torres presentaron una *Moción en Oposición a Moción de Reconsideración y En Cumplimiento de Orden* en la que expresaron su postura sobre asuntos procesales relacionados a una prórroga previamente solicitada, así como las razones por las cuales no presentaron una oposición a la moción de BAS en la etapa anterior.

TPI declaró no ha lugar a ambas peticiones, rechazando así los intentos de revertir la determinación impugnada.

Inconforme, BAS acude ante nos y señala la comisión de los siguientes errores:

> Erró el TPI al no resolver favorablemente la SSS-BAS, donde, aparte de los hechos incontrovertidos presentados y sustentados por el peticionario, tampoco fueron controvertidos por la parte recurrida, dándose por hechos admitidos que dan base a que se emita sentencia sumaria favorable para el peticionario declarándose la existencia de una servidumbre de acueductos a su favor sobre el predio sirviente de la parte recurrida.

> Erró el TPI al no desestimar la reconvención de la parte recurrida al esta haberse presentado tardíamente y encontrarse prescrita.

En reacción a lo antes, MAO instó una *Oposición A La Expedición de Auto de Certiorari.*

De otra parte y mediante un recurso instado por separado (KLCE202301129), Miguel Ortiz Torres y MAO & Associates Investment, Inc. señalaron que, el foro primario erró al denegar su moción de sentencia sumaria. En su escrito expusieron sus argumentos sobre la ausencia de jurisdicción, por falta de parte indispensable, academicidad y la doctrina de velo corporativo. Además, discutieron la ausencia de controversias en el caso, así como su postura sobre la ausencia de prueba, la servidumbre de paso de agua, y la doctrina de daños continuos, en aras de sostener la procedencia de su reclamo por la vía sumaria.

En respuesta, BAS presentó un *Memorando En Oposición a Expedición de Auto de Certiorari.* Con el beneficio de la comparecencia de las partes en ambos recursos, procedemos a resolver.

**II.**

**A. *Certiorari***

---

Añadieron su postura en torno al petitorio instado por BAS. Es de notar que en atención a las tres comparecencias posteriores a la sentencia el TPI las declaró no ha lugar, sin más. Es decir que, no surge del expediente pronunciamiento particular del TPI sobre lo señalado por MAO en dicho escrito en oposición.

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, resuelto el 8 de mayo de 2023; *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, resuelto el 12 de abril de 2023. Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

Por su parte, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021). Esa regla establece que el recurso de *certiorari* solo se expedirá cuando se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo. *Torres González v. Zaragoza Meléndez,* supra.

No obstante, la citada la Regla 52.1, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. *Íd.* El delimitar la revisión a instancias específicas tiene como propósito evitar las "dilaciones innecesarias,

el fraccionamiento de causas y las intervenciones a destiempo." *Íd.*; Véase, además, *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478, 486-487 (2019).

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari*. La citada Regla dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en que se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Pueblo v. Rivera Montalvo,* 205 DPR 352 (2020).

**B. Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario, y el derecho así lo permita. *Serrano Picón v. Multinational Life Insurance Company*, 2023 TSPR 118, resuelto el 29 de septiembre de 2023; *Oriental Bank v. Caballero García*, 2023 TSPR 103, resuelto el 23 de agosto de 2023; *González Meléndez v. Municipio Autónomo de San Juan y otros,* 2023 TSPR 95, resuelto el 24 de julio de 2023; *Acevedo Arocho y otros v. Departamento de Hacienda de Puerto Rico y otros,* 2023 TSPR 80, resuelto el 26 de junio de 2023. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Universal Insurance Company y otro v. Estado Libre Asociado de Puerto Rico y otros,* 2023 TSPR 24, resuelto el 7 de marzo de 2023. Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *González Meléndez v. Municipio Autónomo de San Juan y otros,* supra. De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba

incontrovertible sobre todos los elementos indispensables de su causa de acción. *Universal Insurance Company y otro v. Estado Libre Asociado de Puerto Rico y otros,* supra.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot,* 203 DPR 687 (2019). Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Cabe destacar que, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964

(2022). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *González Meléndez v. Municipio Autónomo de San Juan y otros,* supra. Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario

aplicó correctamente el derecho. *Acevedo Arocho y otros v. Departamento de Hacienda de Puerto Rico y otros,* supra.

**III.**

Hemos evaluado cuidadosamente el recurso ante nuestra consideración y entendemos que, por tratarse de una denegatoria de sendas mociones dispositivas, conforme a lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra,* tenemos autoridad para atender el mismo. De igual forma, el presente caso cumple con los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* por lo que procede expedir el auto de *certiorari,* y conforme autoriza la normativa antes expuesta, modificar el dictamen a los fines de precisar los hechos que permanecen en controversia. Nos explicamos.

En el presente recurso ambas partes sostienen que el TPI incidió al no declarar ha lugar sus respectivos petitorios sumarios. En su primer señalamiento de error BAS arguye que, MAO no objetó propiamente las propuestas de hechos conforme exige la Regla 36 de la Reglas de Procedimiento Civil*, supra,* por lo que, procede dictar sentencia a su favor. En particular aduce que, existe una servidumbre de aguas que beneficia a BAS sobre el Lote C que no requiere ser inscrita por ser continua y aparente. En su segundo señalamiento de error centra su argumento sobre la falta de jurisdicción sobre la reconvención instada por MAO. A su entender, dicha reclamación se encuentra prescrita, por lo que procede su desestimación.

Por su parte, MAO discute varios temas para demostrar que el foro primario erró al no desestimar la demanda instada por BAS y al no dictar una sentencia sumaria a su favor. En primer lugar, arguye que, el TPI no ostenta jurisdicción ante la falta de inclusión de los titulares o el titular del Lote F como parte indispensable. Sostiene que, al lado este del Lote E, existe otro predio de terreno

denominado Lote F con una estructura que, a su entender, le ha cerrado el paso del agua que por allí discurría, desde la década de los 50. Alega que, allí se erigió una pared y se detuvo el flujo de las escorrentías del solar de BAS. Explica que, su perito, Ingeniero Segarra, identificó hallazgos que demuestran la necesidad de incluir el dueño del Lote F en este pleito, los cuales fueron negados por el perito del demandante, Ingeniero Hornedo. Añade a su argumento sobre la falta de jurisdicción que el caso se ha tornado académico. Para fundamentar su postura expone que, en el 2007, BAS construyó un poceto para resolver problemas con el agua. A su juicio, BAS pretende que MAO permanezca inerte ante cualquier flujo de agua en exceso que el predio de BAS no pueda soportar, ante un evento significativo de lluvia. A su entender, el sistema de bombeo colocado para atender aguas que se acumulan en su parte posterior resolvió el asunto, pero no el peligro de daños al predio de MAO por cualquier exceso.

En segundo lugar, MAO argumenta que, el TPI debió desestimar el pleito en contra del señor Ortiz Torres en su capacidad personal. Arguye que, en este caso, no se han presentado los fundamentos que justifiquen descorrer el velo corporativo, por lo que, tampoco procede dejar sin efecto las protecciones legales al señor Ortiz Torres, como propietario y oficial de la corporación que se distinguen de la entidad corporativa.

Con relación a la demanda de BAS en sus méritos y atinente a la alegada servidumbre de paso de agua explica que, el Lote E ocupado por BAS, se encuentra pavimentado y ello es distinto a lo que surge de los planos de PRIDCO. Sostiene que, lo antes provoca un incremento sustancial del volumen de escorrentía de agua y magnitud de la descarga pluvial hacia el predio de MAO, lo cual contraviene lo dispuesto en el Reglamento de Planificación Número

3[7] sobre el manejo de escorrentía en desarrollos. Arguye que, por resultar de una "obra del hombre", MAO no está obligado a recibir el decurso de agua proveniente del predio de BAS. Por ello sostiene que, no existe una servidumbre debidamente constituida, ya que el predio no se encuentra en las mismas condiciones de su forma original. Por último, plasma su postura sobre la suficiencia de la prueba documental que sustenten su petitorio para sostener su petitorio sumario. Añadimos que, tanto en su oposición al recurso instado por BAS, así como en el suyo, MAO discute lo antes señalado y en particular destaca que las obras de BAS y la construcción del muro que interesa realizar, le causa daños continuos por lo que su reconvención no se encuentra prescrita.

Conforme nos exige la normativa antes expuesta y en particular lo resuelto en *Roldán Flores v. M. Cuebas et al*, supra, a la pág. 679, nos compete determinar, de manera inicial, si las partes cumplieron las formalidades requeridas en sus petitorios sumarios. Al examinar la moción instada por MAO surge que, dicha parte propuso 89 propuestas con referencias a distintos documentos, informes y fotografías. Dividió los hechos incontrovertidos por temas. Los primeros 23 hechos corresponden a la reconvención instada. Además, propuso 18 hechos para contrarrestar el *injunction* permanente y la demanda instada por BAS. Añadió por separado 10 hechos que en conjunto denominó "sobre nuestras defensas afirmativas". De igual forma incluyó 16 propuestas de hechos incontrovertidos referentes al informe pericial del Ingeniero Segarra y otro referente al informe pericial del CPA José A. Díaz Crespo. También añadió 21 hechos como incontrovertidos relacionados a la deposición del Ingeniero Hornedo. Mediante la oposición a los 89 hechos propuestos por MAO observamos que, BAS hizo referencia a

---

[7] Apéndice de MAO pág. 185 en la que cita Junta de Planificación Reglamento Sobre Lotificación y Urbanización (Reglamento de Planificación Número 3) Revisado, San Juan, PR, Vigencia 30 de junio de 2005.

la mayoría de estos de forma enumerada y en otras instancias agrupó varias de sus objeciones en una sola alegación, con referencias a distintos exhibits.[8] A su vez y en el mismo escrito, BAS instó su propio petitorio en el cual incluyó 12 propuestas de hechos con referencias a documentos y fotografías.

Al entender sobre este tema particular de cumplimiento de formalidades, el TPI dictaminó que ambas mociones no cumplen, en su totalidad, las exigencias de la normativa aplicable, al no referirse propiamente y en todas las instancias, a los documentos con número de páginas y párrafos específicos. Hemos evaluado *de novo* las referidas mociones y coincidimos en algunas instancias con lo esbozado por el foro primario sobre este particular. A ello añadimos que, ambas partes incluyeron como hechos lo que podrían considerarse como conclusiones de derecho y argumentos en aras de adelantar sus respectivas teorías del caso y controversia. No obstante lo anterior, colegimos que, las partes cumplieron sustancialmente con los requerimientos de la Regla 36, *supra,* y la jurisprudencia aplicable, por lo que la falta de especificidad e inclusión de conclusiones de derecho, no imposibilitan la continuación del escrutinio sobre si existen hechos materiales en controversia que impidan resolver este caso por la vía sumaria.

Superado lo anterior, adelantamos que, de nuestro examen cuidadoso del expediente voluminoso y de nuestra evaluación *de novo,* colegimos que el foro primario no incidió al denegar ambos petitorios ante la existencia de controversias medulares. Si bien es cierto que, el TPI únicamente consignó nueve hechos incontrovertidos -los cuales no están cuestionados por ninguna de las partes- los mismos resultan insuficientes para disponer de la solicitud de *injunction* permanente, la demanda y la reconvención

---

[8] Véase Apéndice págs. 364 -366. A modo de ejemplo señalamos los incisos números 36,38,39,40 y 42.

pendientes en este caso. De otra parte, consideramos que no incidió al consignar controversias medulares que impiden la adjudicación del caso sumariamente. No obstante lo anterior, por los fundamentos que esbozamos a continuación, colegimos que el foro primario debió incluir controversias adicionales. Añádase a ello que, no surge del dictamen recurrido, atención alguna a las mociones dispositivas instadas por ambas partes, las cuales permanecen sin resolver.

De una lectura de la *Resolución* impugnada y en particular de la lista de hechos y las controversias identificadas, resulta evidente que el TPI no hizo referencia alguna a los asuntos atinentes a la falta de parte indispensable, la posible academicidad de la causa, la alegada prescripción de la reconvención y la solicitud de desestimación de la demanda instada en contra del señor Miguel Ortiz Torres, en su capacidad personal. Ello de por sí, constituye razón suficiente para determinar que, el foro primario incidió al no adjudicar las peticiones de índole jurisdiccional o en su defecto, al no consignar en su pronunciamiento las controversias adicionales atinentes a dichos asuntos que resultan necesarios dilucidar, en aras de disponer de las súplicas dispositivas. Lo antes, ciertamente impide la adjudicación de la causa por la vía sumaria.

En cumplimiento de la normativa que nos exige examinar *de novo* el expediente y aplicar los criterios que la Regla 36, *supra*, y la jurisprudencia aplicable, procedemos a examinar los petitorios instados y así los errores señalados por las partes. Veamos.

Al examinar las 12 propuestas de hechos de BAS observamos que, el TPI adoptó en sus determinaciones 8 y 9 lo expuesto por BAS relacionado al desarrollo del parque industrial por PRIDCO en la década del 1950. Sin embargo, no surge que el TPI haya aceptado las demás propuestas que, a modo de ejemplo, incluyen conclusiones sobre la alegada prescripción de la causa instada por

MAO, las distintas elevaciones existentes del predio en controversia, el comportamiento de aguas pluviales y la existencia de una servidumbre de agua en beneficio del Lote E. Indistintamente de lo anterior, en su primer señalamiento de error, BAS indica que, ante la ausencia de una oposición de MAO a su petitorio sumario, el TPI debió dar por admitidas sus propuestas y dictar sentencia a su favor.

Como se sabe, mediante la Regla 36.3 (c), *supra,* se establece que la parte contraria no podrá descansar en negaciones o en sus propias alegaciones para derrotar una solicitud de sentencia sumaria. Sin embargo, en dicha disposición reglamentaria se advierte que se podrá dictar la sentencia sumaria en su contra "si procede." Al evaluar dicha disposición estatutaria el Tribunal Supremo ha establecido que el hecho de oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. *Ramos Pérez v. Univisión,* 178 DPR 200, 215, (2010) citando a *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714 (1986). Lo antes refleja la doctrina previamente establecida en *Vera v. Bravo,*161 DPR 308, 333 (2004) que se establece que, para derrotar una moción de sentencia sumaria, la parte promovida opositora debe presentar declaraciones juradas y documentos que pongan en controversia los hechos materiales y esenciales que presenta el promovente. No obstante, el solo hecho de no presentar evidencia que controvierta la que presenta la parte promovente, no implica que necesariamente proceda la sentencia sumaria; (citando a *PFZ PRPS Inc, v. Gen Acc. Ins. Co.,* 136 DPR 881 (1994); *Rivera et al v. Superior Pkg. Inc. et al,* 32 DPR 115 (1992). Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria. Deben considerar todos los documentos en autos, sean o no parte de la solicitud de los cuales surjan

admisiones que hagan las partes; (citando *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272 (1990).

En lo atinente a la presente causa, cabe puntualizar que, a tenor de la normativa aplicable, la parte que no presente una oposición a una sentencia sumaria, conforme a las Reglas de Procedimiento Civil, *supra,* se arriesga a que el TPI dicte sentencia en su contra, si procede en derecho. Véase, Regla 36.3(c) de las Reglas de Procedimiento Civil, *supra; León Torres v. Rivera Lebrón,* supra. Como vemos, el mero hecho de que no se presente una oposición o, de presentarse, no cumple con la normativa antes expuesta, no obliga al TPI a automáticamente disponer del asunto por la vía sumaria.

De nuestra revisión de *novo* colegimos que, ante las múltiples controversias medulares que persisten en este caso, no debe prosperar ninguna de las reclamaciones en esta etapa de los procedimientos por la vía sumaria. Cónsono con lo anterior, colegimos que, el foro primario no incidió al no dictar la sentencia sumaria solicitada por BAS de forma automática en contra de MAO.

Al examinar las 89 propuestas de hechos de MAO, las mismas fueron en su gran mayoría, objetadas por BAS. Sin embargo, distinto a lo expuesto por el foro primario observamos que BAS en su oposición aceptó haber realizado unas obras que consistieron en crear un "poceto" cercano a la colindancia con el Lote C para que las escorrentías que ahí pudieran acumularse fueran expulsadas por bombeo hacia la Carretera 189. Lo antes es en respuesta a la propuesta número 12. Sin embargo, persisten controversias medulares sobre las fechas y las consecuencias y/o efectos del sistema de bombeo y demás posibles alteraciones al área.[9]

Además, observamos que la mayoría de las propuestas descansan sobre lo expuesto en los informes periciales y no fueron

---

[9] Véase Apéndice de BAS pág. 360.

propiamente controvertidas por BAS. De nuestra evaluación *de novo*, colegimos que, el foro primario correctamente acertó que existen hechos en controversia ya que los informes periciales se encuentran en contraposición uno del otro.[10]

De nuestro examen *de novo* del expediente apreciamos que de los dos informes periciales surgen distintos hallazgos. A modo de ejemplo, indicamos que el perito de MAO, Ing. Rafael Segarra García, emitió su informe intitulado *Problema de Discurrimiento de Escorrentía Pluvial en el Parque Industrial Bairoa en Caguas, Puerto Rico*, el 15 de julio de 2019, en el cual concluyó que la parte demandante encausa un flujo de escorrentía mayor hacia la propiedad de MAO y las inundaciones de naturaleza recurrente afectan la capacidad de MAO para producir ingresos. Destacó que, no contó con los diseños pluviales efectuados en el predio de BAS como tampoco tuvo acceso a la propiedad (Lote E) para efectuar su estudio.[11] No obstante lo anterior, el perito Segarra concluye que desde la periferia observó que, la propiedad ha sido desarrollada extensamente impermeabilizando el área natural.[12] Cuestionó la confiabilidad de un plano de 2007 (denominado "as built") por entender que se utilizó una "elevación base arbitraria" para fijar niveles. Así, pues, cuestionó los niveles de la elevación original del predio, en comparación con las elevaciones de la topografía original.[13]

De otra parte, BAS presentó un informe pericial preparado por Alex Hornedo Robles & Assoc., PSC Agrimensores cuyo propósito fue atender la controversia sobre si en efecto BAS, dueño del Lote E, tiene derecho de servidumbre para que las aguas pluviales de su propiedad descarguen en los predios colindantes del Lote C.[14] Del

---

[10] Apéndice de MAO y BAS, pág. 450.
[11] Apéndice de MAO, pág. 170.
[12] Apéndice de MAO, pág. 180.
[13] Apéndice de MAO, pág. 181.
[14] Apéndice de BAS, pág. 279.

contenido surge un resumen historial del predio. Con relación al plano denominado "as built" expuso que, el mismo refleja que, después de 50 años, los niveles pluviales se construyeron y permanecieron inalterados en dirección sur-sureste, tal y como se había diseñado en un principio.[15] Surgen referencias a fotos y explicaciones del contenido de dichas piezas evidenciarias. En algunas instancias informa que, a su entender, dichas fotos versan sobre la actividad de lavado de carros en el Lote C, el pobre mantenimiento en el área y lo que resultan ser lugares tapados por sedimento y otras deficiencias en los declives en el Lote C.

Indica que, ambos lotes fueron alterados, pero es de notar que en su informe no surge mención de posibles alteraciones o desarrollos en el Lote E. Señala que, el señor Ortiz Torres, como dueño del lote C, impermeabilizó todo su terreno y sustituyó un desagüe de canal por una tubería de cuatro pulgadas de ancho.[16] Asimismo, surge de la deposición del perito Hornedo que su análisis de BAS Properties fue basado en documentos suministrados y no hizo ninguna mensura o plano.[17] Aclara que, de su examen de los planos concluyó que desde que se construyó el área en la década de los 50, las pendientes y flujo de agua no han sido alteradas, pero en el área se han hecho mejoras.[18] Con relación a las elevaciones, el perito Hornedo indicó que no sabía si el plano denominado "as built" refleja la misma elevación que tenía el predio en el plano original de PRIDCO del año 50.[19]

De lo anterior, podemos constatar la incompatibilidad patente entre los dos informes periciales. Coincidimos con la apreciación del foro primario en que lo antes impide la adjudicación de la causa por la vía sumaria en esta etapa de los procedimientos. De modo que, al

---

[15] Apéndice de BAS, pág. 287.
[16] Apéndice de BAS, pág. 289-294
[17] Apéndice de MAO, pág. 250 líneas 3-10.
[18] Apéndice de MAO, pág. 255 líneas 8-24.
[19] Apéndice de MAO, págs. 270-271 líneas 22-25 y 1-2.

revisar las controversias medulares consignadas por el TPI reconocemos que no incidió en su proceder sobre los méritos de la demanda y la reconvención pendientes por resolver.

Ahora bien, tal y como adelantamos, lo antes no atiende la totalidad de los asuntos correctamente traídos por ambas partes ante nuestra atención. Lo cierto es que, al examinar cuidadosamente el dictamen apelado observamos que subsisten varios petitorios dispositivos que formaron parte de las mociones sumarias que versan sobre asuntos jurisdiccionales. El TPI no adjudicó la solicitud de desestimación por falta de parte indispensable y por academicidad, traída por MAO. Tampoco hizo determinación alguna sobre la súplica del señor Ortiz Torres en búsqueda de la desestimación de la causa incoada en su contra en su capacidad personal. A su vez, dejó sin atender la solicitud de desestimación de la reconvención por prescripción presentada por BAS.

Es norma vigente que, nos abstendremos de adjudicar cuestiones que no han sido atendidas en primera instancia, ante el foro judicial o el foro administrativo. *Trabal Morales v. Ruiz Rodríguez,* 125 D.P.R. 340, 351 (1990); *García González v. Montero Saldaña,* 107 DPR 319, 332-333 (1978). A pesar de que esta Curia puede atender un planteamiento de parte indispensable, nos resulta necesario tomar en consideración que no nos encontramos en posición para adjudicar la procedencia de si el titular del Lote F es una parte indispensable, ante las controversias medulares existentes sobre este particular. A modo de ejemplo, destacamos las objeciones de BAS a las propuestas de hecho de MAO número 9, 10, 11 y 39 en la que se discuten las obras efectuadas en el Lote F que pudieran tener un efecto directo sobre los hechos en este caso.[20] Le

---

[20] Véase Apéndice de MAO págs.49-51. Apéndice de BAS págs. 359-360 y objeción número 37 a la pág. 365.

corresponde al foro primario dilucidar cuál fue la obra en el Lote F, qué fecha se desarrolló y cuál es el efecto si alguno sobre los remedios solicitados en este caso.

De igual forma, persisten controversias sobre la identificación de mejoras y obras, así como la magnitud y procedencia de los problemas existentes según señalado en las controversias números 5, 6 y 7 por el TPI. Ahora bien y según antes expuesto, hemos reconocido que, BAS admitió haber creado una obra para expulsar agua por un sistema de bombeo. Sin embargo, de un examen de las mociones de las partes nos resulta evidente que, persisten controversias medulares sobre el funcionamiento de dicha obra y su efecto si alguno. Lo antes impide determinar, por la vía sumaria, si se han tornado académicas algunas de las alegaciones de BAS incoadas en contra de MAO. Además, en su pronunciamiento el foro primario no adjudicó la solicitud de desestimación contra el señor Ortiz Torres en su capacidad personal. Solo hizo referencia a MAO como entidad corporativa y dueña del Lote C, quedando así en controversia la relación del señor Ortiz Torres con la referida corporación, las alegaciones expuestas en su contra y si resulta necesaria su inclusión en el pleito en su capacidad personal. Según la normativa antes expuesta, procede abstenernos de adjudicar este asunto que no ha sido atendido en primera instancia.

Por último, observamos que el foro primario incluyó como controversia pendiente la fecha de realización de modificaciones y obras de construcción. Sin embargo, debió añadir que falta determinar las fechas de los alegados sucesos en este caso, así como la fecha en que MAO advino en el conocimiento de sus alegados daños (si alguno) que podrían fundamentar los planteamientos sobre prescripción de la reconvención y en la alternativa, si existen hechos que demuestren daños continuos según expuesto por MAO.

Reconocemos que las controversias que inciden en la jurisdicción deberán ser atendidas como asuntos de umbral. Sin embargo, de nuestra evaluación del recurso instado y ante las múltiples controversias medulares de hecho antes reseñados, no nos encontramos en posición para adjudicar las solicitudes de desestimación que surgen de ambos petitorios sumarios y mucho menos revisar alguna determinación que en esta etapa de los procesos se encuentra pendiente ante la consideración del foro primario. Le corresponde al TPI atender todas las solicitudes de desestimación pendientes ante su consideración como asunto de prioritario.

Por ello, y conforme los criterios establecidos en la Regla 40 de nuestro Reglamento, *supra,* estimamos prudente expedir el auto de *certiorari* a los únicos efectos de modificar el dictamen con el propósito de añadir a la lista consignada por el foro primario las controversias adicionales antes indicadas que a nuestro entender impiden la adjudicación de la presente causa de forma sumaria. Resolver de otra manera sería pasar por alto los preceptos establecidos en la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia interpretativa del Tribunal Supremo a esos efectos.

**IV**

Por los fundamentos que anteceden, expedimos el auto de *certiorari,* modificamos la *Resolución* recurrida a los fines de añadir los hechos medulares que permanecen en controversia atinentes a las referidas solicitudes de desestimación sobre prescripción, academicidad y parte indispensable. Así, devolvemos el caso para la continuación de los procedimientos, conforme lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones